# EXHIBIT 4

"

BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2740** |

BRIEF IN SUPPORT OF MOTION TO VACATE
CONDITIONAL TRANSFER ORDER ("CTO-56")

Pursuant to 28 U.S.C. § 1447(c) and the legal and factual arguments contained herein, CTO-56 should be vacated pending remand to the Middlesex County, New Jersey Law Division Multi-County Litigation for improper "snap removal".

## BACKGROUND

Fourteen complaints were mailed to the Court for filing on April 27, 2020, as standard practice and protocol for MCL cases in Middlesex County (Bidwell, Bryant, Cooper, Cora, Gamboa, Glover, Gough, Haughton, Pack, Payton, Rooney, Siciliano, Sullivan and Vicks). **Exhibit F**, Affidavit of Karen Beyea-Schroeder. Despite the proper mailing of these Complaints, the Court shut down and halted the Court's filing process. In the Court's haste to protect the health and safety of its employees, the Complaints at issue became lost. *Id.* The Court's MCL Manager, Delores Taylor, called Plaintiffs' counsel and advised they were scouring the courthouse to look for the Complaints. *Id.* These calls to find the missing Complaints continued through May 19, 2020. *Id.* The Plaintiff only found out the cases ultimately became filed when served with Defendant's Notices for Removal. *Id.* The Middlesex County Court never provided

any notice to the Plaintiffs that the cases were ultimately filed, given a docket number or eligible for service on any Defendant. *Id.*

The other three cases at issue were filed on May 27, 2020. *Id.* The track assignment was not issued until May 28, 2020. *Id.* The Sanofi defendants, New Jersey defendants, closed their headquarters due to the COVID pandemic and the security guards at this facility could not accept service of the Complaints. *Id.*

Defendant Hospira removed this action to the District Court for the District of New Jersey on June 4, 2020, on the basis of diversity of citizenship jurisdiction, 28 U.S.C. § 1332. To date, we have not received any Answer filed in these matters. In its removal papers, Hospira contends that removal is not barred by 28 U.S.C. § 1441(b) because Defendant was not served at the time of removal.

On June 3, 2020, the United States Judicial Panel on Multidistrict Litigation ("the Panel") issued Conditional Transfer Order-56 ("CTO-56") in MDL No. 2740. This maneuver was simply the first step of an attempt by the Defendant to have this case be transferred to and consolidated in the multidistrict proceeding, *In re: Taxotere (Doxetacel) Products Liability Litigation*, MDL No. 2740, pending in the Eastern District of Louisiana, against Plaintiffs' wishes.

Plaintiffs oppose this transfer and respectfully prays that the Court Vacate CTO-56 as it relates to each of these Plaintiffs.

## **ARGUMENT**

I.  **DEFENDANTS ARE NOT ENTITLED TO SNAP REMOVE THESE CASES**

The cases made a part of this Motion, were duly filed in the New Jersey Multicounty Litigation (MCL) 628 in the New Jersey Superior Court, Middlesex County. This MCL was formed about a year and a half ago, and has been moving forward to the present. Prior to the MCL 628 being formed, an MDL was created and coordinated in the U.S. District Court for the Eastern District of Louisiana, styled In Re Taxotere (Docetaxel) Products Liability Litigation, MDL 2740, assigned to Hon. Jane Triche Milazzo.

At the time of filing the Complaints for the plaintiffs at issue, New Jersey Federal and State Courts were under a strict set of Emergency Orders restricting access to those Courts and expanding and loosening the rules pertaining to ensuring the safety and health of court employees. See **Exhibit A** and **Exhibit B**.

Fourteen complaints were mailed to the Court for filing on April 27, 2020, as was standard practice and protocol for MCL cases in Middlesex County (Bidwell, Bryant, Cooper, Cora, Gamboa, Glover, Gough, Haughton, Pack, Payton, Rooney, Siciliano, Sullivan and Vicks). **Exhibit F**, Affidavit of Karen Beyea-Schroeder. Despite the proper mailing of these Complaints, the Court shut down and halted the Court's filing process.  In the Court's haste to protect the health and safety of its employees, the Complaints at issue became lost.  *Id.*  The Court's MCL Manager, Delores Taylor, called Plaintiffs' counsel and advised they were scouring the courthouse to look for the Complaints.  *Id.*  These calls to find the missing Complaints continued through May 19, 2020.  *Id.*  The Plaintiff only found out the cases ultimately became filed when served with Defendant's Notices for Removal.  *Id.*  The Middlesex County Court never provided

any notice to the Plaintiffs that the cases were ultimately filed, given a docket number or eligible for service on any Defendant. *Id.*

The other three cases at issue were filed on May 27, 2020. *Id.* The track assignment was not issued until May 28, 2020. *Id.* The Sanofi defendants, New Jersey defendants, closed their headquarters due to the COVID pandemic and the security guards at this facility could not accept service of the Complaints. *Id.*

Therefore, it is submitted the only way Defendants could have filed these removals is if they were monitoring the Docket to hedge their bets they could game the system and beat the process server to their doors despite any Emergency Orders. It's bad enough they feel monitoring was necessary to deprive Plaintiffs their right to choose venue, but to do it in the middle of a pandemic makes this conduct reprehensible.

Before Plaintiffs or their process server was able to obtain the conformed copies of the Complaints, which were necessary to properly serve Defendants, their counsel filed "Snap Removals" for all the cases. Simply put, while Plaintiffs were required to serve Defendants with conformed copies of the Complaints, the cases were removed before they could obtain that which was required in order to effect service, meaning they gamed the system by removing before they could possibly be served. See *Encompass*, 902 F.3d at 153 (quoting 28 U.S.C. 1441(b)(2)).

So if no Defendant could have been served pursuant to the Rules, they cannot argue that they were permitted to snap remove. See N.J. Ct. R. 4:4-4(a)(6) (service may be effected "[u]pon a corporation, by serving a copy of the summons and complaint ... o[n] any person authorized by appointment or by law to receive service of process on behalf of the corporation," such as a

registered agent for service); see also *Senju Pharm. Co., Ltd. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 436 (D.N.J. 2015) (noting that "New Jersey Court Rule 4:4-4(a)(6) allows for in personam jurisdiction over a corporate defendant by personal service within the state upon an authorized agent of the corporation.").

## II. COVID-19  AND SNAP REMOVALS

### A.  Overview of New Jersey Snap Removals And Covid-19 Issues

1.  Pre Covid-19 Snap Removal Issues

Prior to the Covid-19 problem, on November 14, 2019, the United States House Judiciary Subcommittee on Courts, Intellectual Property, and the Internet held a hearing entitled, "Examining the Use of 'Snap' Removals to Circumvent the Forum Defendant Rule." The Subcommittee heard testimony from four witnesses of varying backgrounds, including a noted New Jersey mass tort attorney, Ellen Relkin, Esq. The Subcommittee also heard testimony from Kaspar J. Stoffelmayr, Esq., who testified on behalf of Lawyers for Civil Justice, "a national coalition of law firms, corporations and defense trial lawyer organizations. The testimony indicated that snap removals were an inappropriate attempt to place an unnecessary roadblock to forum selection. That Committee found that:

> Pre-service removal by means of monitoring the electronic docket smacks more improper joinder of a forum defendant that plaintiff has no intention of serving. When the "joined and served" language was added to Section 1441(b) in 1948, "Congress could not possibly have anticipated the tremendous loophole that would one day manifest from technology enabling forum defendants to circumvent the forum defendant rule by … electronically monitoring state court dockets." *Sullivan v. Novartis Pharms. Corp.*, 575 F. Supp. 2d 640, 645-46 (D.N.J. 2008). "As a matter of common sense, … Congress did not add the "properly joined and served" language in order to reward defendants for conducting and winning a race, which serves no conceivable public policy goal, to

file a notice of removal before the plaintiffs can serve process." *Id*.
at 646."

*See* Kaspar J. Stoffelmayr, *Testimony of Kaspar J. Stoffelmayr*. House Judiciary, *Examining the Use of "Snap" Removals to Circumvent the Forum Defendant Rule*. YOUTUBE (Nov. 14, 2019).

In another matter, *Perez v. Forest Laboratories, Inc.*, 902 F. Supp. 2d 1238, 1243 (E.D. Mo. 2012), the *Perez* Court found:

> The intent underlying the forum defendant rule and the "joined and served" language is to allow out-of-state defendants to avoid local bias and remove to a federal forum, while preventing plaintiffs from joining, but not serving, forum defendants to block removal. It is unlikely that the plain wording of Section 1441(b)(2) broadly encompasses an electronic docket vigil that would enable forum defendants, or out-of-state defendants joined to forum defendants, to exercise their own forum-shopping manipulation of jurisdiction.
>
> Here, strict adherence to statutory language would run counter to legislative intent instead of furthering it. Forest removed six days after Plaintiffs initiated this suit. There was no opportunity to effect service on any defendant prior to removal. The rationale of the forum defendant rule applies to the parties in this action as the presence of a local defendant, Forest Pharmaceuticals, Inc., reduces the need for a neutral federal forum offering a respite from local bias. The tactical advantage offered to the defendant by the electronic docket is just as inconsistent with the concerns of diversity and removal jurisdiction as improper joinder by a plaintiff. Here, the fear of local bias is particularly questionable as Plaintiffs are out-of-state litigants as well as Forest. While electronic docketing makes removal possible, it does not make it proper.

*Id*. at 1245-46. Finally, Judge Webber concluded: "This Court finds that pre-service removal here, even if within the plain language of Section 1441(b)(2), is inconsistent with the fundamental purposes of removal….." *Id*. at 1246.

Hospira is attempting to game the system which is against public policy and runs counter to the legislative intent of the law. Moreover, with Hospira bearing the burden to prove that (1) federal subject matter jurisdiction exists, (2) removal was timely filed, and (3) removal was proper, and given the facts herein, Defendant cannot meet its burden of proof. *See* 28 U.S.C. §§ 1441, 1446, 1447; see *Boyer v. Snap-on Tools, Corp.*, 913 F.2d 108, 111 (3d Cir. 1990); *see also Dutton, supra.* There is no way Defendant meets this burden of proof given that the Middlesex County Court failed to provide any notice to Plaintiffs that the conformed Complaints were filed and available to be served. In addition to the fact that the Covid-19 issues must extend time for service and the local defendant, Sanofi, closed their headquarters due to the pandemic.

### 2. New Jersey Post Covid-19 Issues

On March 11, 2020, the World Health Organization classified COVID-19 as a global pandemic, anticipating that "the number of cases, the number of deaths, and the number of affected countries" would increase. World Health Organization, Mar. 11, 2020 (https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020) (last visited Jun. 24, 2020). Around that time, the United States had reported only approximately 1,000 cases of COVID-19. As of June 24, 2020, that number has risen to over 2.3 million and the virus has taken 121,117 lives nationally. Centers for Disease Control and Prevention, *CDC COVID Data Tracker,* https://www.cdc.gov/covid-data-tracker/#cases (last visited Jun. 24, 2020). New York and New Jersey have the greatest number of infections and deaths in the nation, with New Jersey reporting a total of 169,734 cases. *Id.* According to the Centers for Disease Control and Prevention (the "CDC"), COVID-19 spreads mainly from person-to-person between those "who are in close

contact with one another (within about 6 feet)" and possibly when people touch contaminated surfaces and then touch their mouths, noses, or eyes. Center for Disease Control and Prevention, *Social Distancing,* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html (last visited Jun. 24, 2020).  The most common symptoms of COVID-19 include fever, cough, and shortness of breath. Center for Disease Control and Prevention, *Symptoms of Coronavirus,* https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited Jun. 24, 2020)*.* There is presently no vaccine to prevent COVID-19 infections. The CDC and health experts thus emphasize the importance of "social distancing" (i.e. staying at least six feet apart), regularly disinfecting "high touch" surfaces, and wearing cloth face covering to curtail the spread of the virus. Center for Disease Control and Prevention, *Social Distancing,* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html  (last visited Jun. 24, 2020).

Experts also still have much to learn about how the virus spreads. On or about March 30, 2020, the CDC director, Dr. Robert Redfield, in an interview with National Public Radio affiliate WABE, stated that a significant number of individuals that are infected actually remain asymptomatic, which may be as high as 25 percent. Whitehead, Sam. *CDC Director on the Coronavirus Fight for the Months to Come*, WABE (Mar. 30, 2020)( https://www.wabe.org/cdc-director-on-whats-needed-in-the-fight-against-coronavirus/)(last visited Jun. 24, 2020). This is important because asymptomatic individuals contribute to the transmission of the virus. Furthermore, those who become symptomatic can likely transmit the virus up to 48 hours before they show symptoms. These asymptomatic transmitters and individuals who are transmitting the virus before they become symptomatic help explain how rapidly the virus can spread. *Id.*

Symptoms of COVID-19 can be mild, and anyone can have mild to severe symptoms. Center for Disease Control and Prevention, *Symptoms of Coronavirus,* https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited Jun. 24, 2020)*.* Certain individuals are at higher risk for severe illness or death if they contract COVID-19. Among them are persons who are 65 and older, those in nursing homes or long-term care facilities, and people of all ages who are immunocompromised. Centers for Disease Control and Prevention, *People Who Need to Take Extra Precautions,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited Jun. 24, 2020). It was clear the best way to prevent illness is to avoid being exposed to this virus. This basic fact concerned the State of New Jersey, so the state issued various orders, including those which required its citizens to remain at home, but if you had to go out, you needed to practice social distancing and ensure proper hygiene to minimize the risk of infection. State of New Jersey Governor Phil Murphy, https://www.nj.gov/governor/news/news/562020/20200320j.shtml (last visited Jun. 24, 2020); *See also*, State of New Jersey Department of Health, *Communicable Disease Service,* https://www.state.nj.us/health/cd/topics/covid2019_community.shtml (last visited Jun. 24, 2020).

This "social distancing" and stay at home order also applied to the courts of New Jersey, which obviously made it nearly impossible to conduct legal affairs as had been normal. See *Kolawole O.T. v. Ahrendt*, 2020 U.S. Dist. LEXIS 101307, 6-15, Civil Action No. 19-21802-MCA (D.N.J. June 10, 2020).

**B. Specific orders related to the New Jersey Federal Courts**

In response to the Covid-19 national emergency declaration, as set forth in U.S. District Court of New Jersey, Standing Order 2020-12, which superseded previous Standing Orders 2020-02, 2020-03, 2020-04 and 2020-09, *see* **Exhibit B**, the New Jersey District Court ordered, in pertinent part as follows:

> The Court ORDERS that this Standing Order supersedes Standing Orders 2020-02, 2020-03, 2020-04 and 2020-09…
>
> The Court ORDERS that the provisions in its prior Standing Orders that, all filing and discovery deadlines in civil matters that fell between March 25, 2020 and April 30, 2020 were extended by forty-five (45), and those that fell between May 1, 2020 and May 31, 2020 were extended by thirty (30) days, remain in effect, unless a presiding judge in an individual case directs otherwise. This Order affords no further extensions of filing and discovery deadlines. This extension does not apply to any scheduled dates of conferences, which are controlled by the presiding judge…
>
> The Court further ORDERS that all deadlines set by Federal or Local Rules or Court Orders, including, but not limited to, scheduling orders in all civil cases, remain in effect unless modified by this Standing Order, further Order of the Court or by Order of the assigned judicial officer. Any dispute over whether discovery can be effectively accomplished in a manner consistent with applicable health guidelines may be referred to the Magistrate Judge for resolution. Judicial officers may apply the principles of flexibility and accommodation to reasonable requests for filing or scheduling adjustments necessitated by reasonable and fact- based travel, health or safety concerns, or advice or directives of public health officials…
>
> The Court ORDERS that aside from ordering a jury trial, individual judges presiding over civil and criminal proceedings may take such actions consistent with this Order and the Recovery Guidelines as may be lawful and appropriate to ensure the fairness of the proceedings and preserve the substantial rights of the parties…

> The Court ORDERS that any litigant may seek such relief from this Order that he/she deems necessary due to emergent circumstances.
>
> The Court further ORDERS that additional Orders addressing Court Operations Under the Exigent Circumstances Created by COVID-19 shall be entered as warranted, and that this Standing Order will expire no later than August 31, 2020, unless extended by further Order of the Court…"

*See* **Exhibit B.**

A reasonable reading of these orders implies that remand motions should be liberally interpreted in light of such emergent situations, that "snap removals" must be disfavored and subject to remand pending the expiration of the emergency rules as set forth above. This Order clearly states that any filing deadlines occurring between March 25, 2020 and April 30, 2020 are extended 45 days, and those deadlines occurring from May 1, 2020 to May 31, 2020, are extending by 30 days. Reading that with other subparts, this Order means that cases should be treated with rulings consistent with fundamental fairness and these Orders. Nothing is more fundamentally fair than allowing objecting Plaintiffs the right to file the appropriate remand motions to respect their choice of venue in New Jersey. Old "snap removal" rules cannot hold sway in the Covid-19 Emergency, when the Orders are designed to alter such rules to reflect the extra short period of time required to effect service on Defendants properly joined.

**C.      Specific orders related to the New Jersey State Court**

The question of "remand" to NJ State Court must be a function of whether the "snap removal" was appropriate is a matter of NJ State law. In accord with the Federal Emergency Rules, the State Courts in New Jersey had and still have similar rules in place. On March 15, 2020, the New Jersey Supreme Court ordered that "time constraints for discovery will be

relaxed" and that "filings still will be accepted through eCourts for applicable case types and on paper for other cases with the required fee to be submitted as usual." **Exhibit A**. It did not require electronic filings, and in MCL cases, the practice, protocol and procedure at the time was to mail in the Complaints. Then on March 27, 2020, the New Jersey Supreme Court ordered that "Rule 4:4-1 is relaxed and supplemented to extend the time period for issuance of a summons from within 15 days to within 60 days…." *Id.*, at (3)(d). The Covid-19- Second Omnibus Order On Court Operations And Legal Practice - More Operations To Be Conducted Remotely; **Exhibit A**, provides, in pertinent part as follows:

> During the COVID-19 pandemic, most court operations have continued remotely in all levels of the court system. Since transitioning to virtual operations, the courts have conducted more than 12,000 remote court events involving more than 80,000 participants…
>
> The COVID-19 pandemic continues to affect attorneys, parties, and others, both professionally and personally. "In recognition of the pervasive and severe effects of the COVID-19 public health crisis, the court in any individual matter consistent with Rule 1:1-2(a) may suspend proceedings, extend discovery or other deadlines, or otherwise accommodate the legitimate needs of parties, attorneys, and others in the interests of justice." Such individual requests for extensions may be submitted by letter in lieu of a formal motion…
>
> The New Jersey courts are continuing to provide meaningful access to justice throughout this unprecedented emergency. Sustaining and expanding that access requires a careful and considered balancing of the important interests at stake, as implemented in the Court's April 24 Second Omnibus Order. As the COVID-19 pandemic continues, the Court will revisit these matters and adjust as appropriate...

*See* **Exhibit A.** This did not change the method of filing Complaints.

Moreover, reading this clearly implies that stringent time limits encompassed by the prior "snap removals" must be read in accord with fundamental fairness, or as specified above, "balancing" of the important interest as stake". Here, those interests compel an "expansion" of the rules regarding remand where in less serious pandemic times, the old "snap removals" may be far more palatable than they are in quieter times.

Hospira's gamesmanship in violation of these New Jersey State orders during this pandemic is evident in their pleadings. The *Bramblett* Notice of Removal was so hastily drawn that it failed to mention the facts surrounding service, only that that it was allegedly not accomplished. **Ex. C**. They did not even note they are not a party to the litigation. *Id.* The burden is on the party removing to prove it did not receive notice. With the Court losing the Complaints, failing to provide any notice to Plaintiff that the cases were found and filed with conformed Complaints being ready for service in addition to the fact that Sanofi's headquarters was closed and not accepting service, these are but a few of the many issues during this pandemic for why "snap removals" should not be considered during in these matters. *See* **Exhibit F**. Merely stating it as an allegation is hardly meeting it's burden of proof, especially when "snap removals" are so hastily undertaken that they are not even a party to the lawsuit they remove. We are unsure which other Notices of Removal are equally infirm.

### III. The MDL should vacate CTO-56 and allow the transferor court to rule on the Motion to Remand.

Plaintiffs further submit that a transfer to another court before the putative transferor court decides the motion to remand would be inappropriate and a needless waste of all parties' time and resources. The transferor court retains jurisdiction on pending motions despite the entry of a conditional transfer order. *See, e.g., Smith v. Mail Boxes, Etc.*, 191 F.Supp.2d 1155, 1157

(E.D. Cal. 2002) (quoting J.P.M.L. R. 1.5: "… conditional transfer order … does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court"); *Kohl v. Am. Home Prods. Corp.*, 78 F. Supp. 885, 888 (W.D. Ark. 1999) (same); *Illinois Municipal Retirement Fund v. CitiGroup, Inc.*, 391 F.3d 844, 851-52 (7th Cir. 2004) (in a case involving a remand order by a district court, while an MDL had already been created, the Seventh Circuit held "[w]e will not require a district court that believes that it lacks subject matter jurisdiction over a case to facilitate a transfer under § 1407, a statute that does not itself confer jurisdiction.").

Transfer to another federal court when the subject matter jurisdiction of the transferor court has been vigorously and fully contested, by both Plaintiffs and some Defendants in the instant action, is especially inappropriate. As the Sixth Circuit Court of Appeals has observed in a similar context:

> No matter how desirable respondents feel it may be to consolidate in California all litigation in any way related to [the common question], there is nothing in the applicable statute to provide an exception to the rules normally governing removal of cases from state courts. Such a transfer cannot be made unless the district court properly has jurisdiction of the subject matter of the case.

*Bancohio Corp. v. Fox*, 516 F.2d 29, 32 (6th Cir. 1975).

Transferor courts are thus encouraged to decide motions to remand during the pendency of conditional transfer orders. In *Totola Restaurants, L.P. v. Kimberly-Clark Corp.*, 987 F. Supp. 1186 (N.D. Cal. 1997), the court noted that it, as the transferor court, " . . . retains exclusive jurisdiction until the §1407 transfer becomes effective and, as such, motions to remand [to state court] should be resolved before the panel acts on the motion to transfer." *Id.* at 1189. Likewise, in *McQuilkin v. Ford Motor Co.,* Nos. 01-01-92, 2001 WL 197840 (E.D. La. Feb. 23, 2001), the

court refused to refrain from ruling on a motion to remand merely because a conditional transfer order had been entered, finding that "the motion to remand centers on questions of state law with which the transferor court is more likely to be familiar that the MDL transferee court." *Id.* at *1.

The questions raised by Defendant's removal of this action strike at the heart of constitutional constraints on federal jurisdiction and principles of comity between state and federal courts. Hospira's "hawk" approach to the docket and attempt to remove the action to federal court pre-service to purportedly avoid any "home court" bias of the state court – especially where one of the other defendants, Sanofi who created the patent for Taxotere, is a disingenuous argument. Plaintiffs' Motion to Remand raises issues relating to Defendant's legal gamesmanship of removing this action before the court even notified Plaintiff counsel that any complaint was filed. These considerations weigh heavily in favor of vacating the conditional transfer order to discourage gamesmanship by defendants as "[a]ll doubts about federal jurisdiction should be resolved in favor of remand to state court," *In re Prempro Products Liability Litigation*, 591 F.3d at 620.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' concurrently-filed Motion to Vacate CTO-56 regarding the above-referenced matters, as identified in the attached Schedule of Actions, should be granted. Therefore, Plaintiff respectfully requests that this panel vacate CTO-56 as it relates to Plaintiffs.

**DATED**:  June 25, 2020

Respectfully submitted,

*/s/ Karen H. Beyea-Schroeder*
Riley L. Burnett, Jr.

Karen Beyea-Schroeder
BURNETT LAW FIRM
3737 Buffalo Speedway, 18th Floor
Houston, Texas 77098
Telephone: (832) 413-4410
Facsimile: (832) 900-2120
RBurnett@rburnettlaw.com
Karen.Schroeder@rburnettlaw.com

*Attorneys for Plaintiffs*

BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) PRODUCTS LIABILITY LITIGATION | MDL NO. 2740 |

BRIEF IN SUPPORT OF MOTION TO VACATE
CONDITIONAL TRANSFER ORDER ("CTO-57")

Pursuant to 28 U.S.C. § 1447(c) and the legal and factual arguments contained herein, CTO-57 should be vacated pending remand to the Middlesex County, New Jersey Law Division Multi-County Litigation for improper "snap removal".

## BACKGROUND

Fourteen complaints were mailed to the Court for filing on April 27, 2020, as was standard practice and protocol for MCL cases in Middlesex County (Bidwell, Bryant, Cooper, Cora, Gamboa, Glover, Gough, Haughton, Pack, Payton, Rooney, Siciliano, Sullivan and Vicks). **Exhibit F**, Affidavit of Karen Beyea-Schroeder. Despite the proper mailing of these Complaints, the Court shut down and halted the Court's filing process. In the Court's haste to protect the health and safety of its employees, the Complaints at issue became lost. *Id.* The Court's MCL Manager, Delores Taylor, called Plaintiffs' counsel and advised they were scouring the courthouse to look for the Complaints. *Id.* These calls to find the missing Complaints continued through May 19, 2020. *Id.* The Plaintiff only found out the cases ultimately became filed when served with Defendant's Notices for Removal. *Id.* The Middlesex County Court never provided

Page 1 of 16

any notice to the Plaintiffs that the cases were ultimately filed, given a docket number or eligible for service on any Defendant. *Id.*

The other three cases at issue were filed on May 27, 2020. *Id.* The track assignment was not issued until May 28, 2020. *Id.* The Sanofi defendants, New Jersey defendants, closed their headquarters due to the COVID pandemic and the security guards at this facility could not accept service of the Complaints. *Id.*

Defendant Hospira removed this action to the District Court for the District of New Jersey on June 4, 2020, on the basis of diversity of citizenship jurisdiction, 28 U.S.C. § 1332. To date, we have not received any Answer filed in these matters. In its removal papers, Hospira contends that removal is not barred by 28 U.S.C. § 1441(b) because Defendant was not served at the time of removal.

On June 3, 2020, the United States Judicial Panel on Multidistrict Litigation ("the Panel") issued Conditional Transfer Order-56 ("CTO-57") in MDL No. 2740. This maneuver was simply the first step of an attempt by the Defendant to have this case be transferred to and consolidated in the multidistrict proceeding, *In re: Taxotere (Doxetacel) Products Liability Litigation*, MDL No. 2740, pending in the Eastern District of Louisiana, against Plaintiffs' wishes.

Plaintiffs oppose this transfer and respectfully prays that the Court Vacate CTO-57 as it relates to each of these Plaintiffs.

## **ARGUMENT**

### I.   **DEFENDANTS ARE NOT ENTITLED TO SNAP REMOVE THESE CASES**

The cases made a part of this Motion, were duly filed in the New Jersey Multicounty Litigation (MCL) 628 in the New Jersey Superior Court, Middlesex County. This MCL was formed about a year and a half ago, and has been moving forward to the present. Prior to the MCL 628 being formed, an MDL was created and coordinated in the U.S. District Court for the Eastern District of Louisiana, styled In Re Taxotere (Docetaxel) Products Liability Litigation, MDL 2740, assigned to Hon. Jane Triche Milazzo.

At the time of filing the Complaints for the plaintiffs at issue, New Jersey Federal and State Courts were under a strict set of Emergency Orders restricting access to those Courts and expanding and loosening the rules pertaining to ensuring the safety and health of court employees. See **Exhibit A** and **Exhibit B**.

Fourteen complaints were mailed to the Court for filing on April 27, 2020, as was standard practice and protocol for MCL cases in Middlesex County (Bidwell, Bryant, Cooper, Cora, Gamboa, Glover, Gough, Haughton, Pack, Payton, Rooney, Siciliano, Sullivan and Vicks). **Exhibit F**, Affidavit of Karen Beyea-Schroeder. Despite the proper mailing of these Complaints, the Court shut down and halted the Court's filing process.  In the Court's haste to protect the health and safety of its employees, the Complaints at issue became lost.  *Id.*  The Court's MCL Manager, Delores Taylor, called Plaintiffs' counsel and advised they were scouring the courthouse to look for the Complaints.  *Id.*  These calls to find the missing Complaints continued through May 19, 2020.  *Id.*  The Plaintiff only found out the cases ultimately became filed when served with Defendant's Notices for Removal.  *Id.*  The Middlesex County Court never provided

any notice to the Plaintiffs that the cases were ultimately filed, given a docket number or eligible for service on any Defendant. *Id.*

The other three cases at issue were filed on May 27, 2020. *Id.* The track assignment was not issued until May 28, 2020. *Id.* The Sanofi defendants, New Jersey defendants, closed their headquarters due to the COVID pandemic and the security guards at this facility could not accept service of the Complaints. *Id.*

Therefore, it is submitted the only way Defendants could have filed these removals is if they were monitoring the Docket to hedge their bets they could game the system and beat the process server to their doors despite any Emergency Orders. It's bad enough they feel monitoring was necessary to deprive Plaintiffs their right to choose venue, but to do it in the middle of a pandemic makes this conduct reprehensible.

Before Plaintiffs or their process server was able to obtain the conformed copies of the Complaints, which were necessary to properly serve Defendants, their counsel filed "Snap Removals" for all the cases. Simply put, while Plaintiffs were required to serve Defendants with conformed copies of the Complaints, the cases were removed before they could obtain that which was required in order to effect service, meaning they gamed the system by removing before they could possibly be served. See *Encompass*, 902 F.3d at 153 (quoting 28 U.S.C. 1441(b)(2)).

So if no Defendant could have been served pursuant to the Rules, they cannot argue that they were permitted to snap remove. See N.J. Ct. R. 4:4-4(a)(6) (service may be effected "[u]pon a corporation, by serving a copy of the summons and complaint ... o[n] any person authorized by appointment or by law to receive service of process on behalf of the corporation," such as a

registered agent for service); see also *Senju Pharm. Co., Ltd. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 436 (D.N.J. 2015) (noting that "New Jersey Court Rule 4:4-4(a)(6) allows for in personam jurisdiction over a corporate defendant by personal service within the state upon an authorized agent of the corporation.").

## II. COVID-19  AND SNAP REMOVALS

### A.  Overview of New Jersey Snap Removals And Covid-19 Issues

#### 1.  Pre Covid-19 Snap Removal Issues

Prior to the Covid-19 problem, on November 14, 2019, the United States House Judiciary Subcommittee on Courts, Intellectual Property, and the Internet held a hearing entitled, "Examining the Use of 'Snap' Removals to Circumvent the Forum Defendant Rule." The Subcommittee heard testimony from four witnesses of varying backgrounds, including a noted New Jersey mass tort attorney, Ellen Relkin, Esq. The Subcommittee also heard testimony from Kaspar J. Stoffelmayr, Esq., who testified on behalf of Lawyers for Civil Justice, "a national coalition of law firms, corporations and defense trial lawyer organizations. The testimony indicated that snap removals were an inappropriate attempt to place an unnecessary roadblock to forum selection. That Committee found that:

> Pre-service removal by means of monitoring the electronic docket smacks more improper joinder of a forum defendant that plaintiff has no intention of serving. When the "joined and served" language was added to Section 1441(b) in 1948, "Congress could not possibly have anticipated the tremendous loophole that would one day manifest from technology enabling forum defendants to circumvent the forum defendant rule by … electronically monitoring state court dockets." *Sullivan v. Novartis Pharms. Corp.*, 575 F. Supp. 2d 640, 645-46 (D.N.J. 2008). "As a matter of common sense, … Congress did not add the "properly joined and served" language in order to reward defendants for conducting and winning a race, which serves no conceivable public policy goal, to

file a notice of removal before the plaintiffs can serve process." *Id.* at 646."

*See* Kaspar J. Stoffelmayr, *Testimony of Kaspar J. Stoffelmayr*. House Judiciary, *Examining the Use of "Snap" Removals to Circumvent the Forum Defendant Rule.* YOUTUBE (Nov. 14, 2019).

In another matter, *Perez v. Forest Laboratories, Inc.*, 902 F. Supp. 2d 1238, 1243 (E.D. Mo. 2012), the *Perez* Court found:

> The intent underlying the forum defendant rule and the "joined and served" language is to allow out-of-state defendants to avoid local bias and remove to a federal forum, while preventing plaintiffs from joining, but not serving, forum defendants to block removal. It is unlikely that the plain wording of Section 1441(b)(2) broadly encompasses an electronic docket vigil that would enable forum defendants, or out-of-state defendants joined to forum defendants, to exercise their own forum-shopping manipulation of jurisdiction.
>
> Here, strict adherence to statutory language would run counter to legislative intent instead of furthering it. Forest removed six days after Plaintiffs initiated this suit. There was no opportunity to effect service on any defendant prior to removal. The rationale of the forum defendant rule applies to the parties in this action as the presence of a local defendant, Forest Pharmaceuticals, Inc., reduces the need for a neutral federal forum offering a respite from local bias. The tactical advantage offered to the defendant by the electronic docket is just as inconsistent with the concerns of diversity and removal jurisdiction as improper joinder by a plaintiff. Here, the fear of local bias is particularly questionable as Plaintiffs are out-of-state litigants as well as Forest. While electronic docketing makes removal possible, it does not make it proper.

*Id.* at 1245-46. Finally, Judge Webber concluded: "This Court finds that pre-service removal here, even if within the plain language of Section 1441(b)(2), is inconsistent with the fundamental purposes of removal….." *Id.* at 1246.

Hospira is attempting to game the system which is against public policy and runs counter to the legislative intent of the law. Moreover, with Hospira bearing the burden to prove that (1) federal subject matter jurisdiction exists, (2) removal was timely filed, and (3) removal was proper, and given the facts herein, Defendant cannot meet its burden of proof. *See* 28 U.S.C. §§ 1441, 1446, 1447; see *Boyer v. Snap-on Tools, Corp.*, 913 F.2d 108, 111 (3d Cir. 1990); *see also Dutton, supra.* There is no way Defendant meets this burden of proof given that the Middlesex County Court failed to provide any notice to Plaintiffs that the conformed Complaints were filed and available to be served. In addition to the fact that the Covid-19 issues must extend time for service and the local defendant, Sanofi, closed their headquarters due to the pandemic.

2. New Jersey Post Covid-19 Issues

On March 11, 2020, the World Health Organization classified COVID-19 as a global pandemic, anticipating that "the number of cases, the number of deaths, and the number of affected countries" would increase. World Health Organization, Mar. 11, 2020 (https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020) (last visited Jun. 24, 2020). Around that time, the United States had reported only approximately 1,000 cases of COVID-19. As of June 24, 2020, that number has risen to over 2.3 million and the virus has taken 121,117 lives nationally. Centers for Disease Control and Prevention, *CDC COVID Data Tracker,* https://www.cdc.gov/covid-data-tracker/#cases (last visited Jun. 24, 2020). New York and New Jersey have the greatest number of infections and deaths in the nation, with New Jersey reporting a total of 169,734 cases. *Id.* According to the Centers for Disease Control and Prevention (the "CDC"), COVID-19 spreads mainly from person-to-person between those "who are in close

contact with one another (within about 6 feet)" and possibly when people touch contaminated surfaces and then touch their mouths, noses, or eyes. Center for Disease Control and Prevention, *Social Distancing,* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html (last visited Jun. 24, 2020). The most common symptoms of COVID-19 include fever, cough, and shortness of breath. Center for Disease Control and Prevention, *Symptoms of Coronavirus,* https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited Jun. 24, 2020)*.* There is presently no vaccine to prevent COVID-19 infections. The CDC and health experts thus emphasize the importance of "social distancing" (i.e. staying at least six feet apart), regularly disinfecting "high touch" surfaces, and wearing cloth face covering to curtail the spread of the virus. Center for Disease Control and Prevention, *Social Distancing,* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html (last visited Jun. 24, 2020).

Experts also still have much to learn about how the virus spreads. On or about March 30, 2020, the CDC director, Dr. Robert Redfield, in an interview with National Public Radio affiliate WABE, stated that a significant number of individuals that are infected actually remain asymptomatic, which may be as high as 25 percent. Whitehead, Sam. *CDC Director on the Coronavirus Fight for the Months to Come*, WABE (Mar. 30, 2020)( https://www.wabe.org/cdc-director-on-whats-needed-in-the-fight-against-coronavirus/)(last visited Jun. 24, 2020). This is important because asymptomatic individuals contribute to the transmission of the virus. Furthermore, those who become symptomatic can likely transmit the virus up to 48 hours before they show symptoms. These asymptomatic transmitters and individuals who are transmitting the virus before they become symptomatic help explain how rapidly the virus can spread. *Id.*

Symptoms of COVID-19 can be mild, and anyone can have mild to severe symptoms. Center for Disease Control and Prevention, *Symptoms of Coronavirus,* https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited Jun. 24, 2020)*.* Certain individuals are at higher risk for severe illness or death if they contract COVID-19. Among them are persons who are 65 and older, those in nursing homes or long-term care facilities, and people of all ages who are immunocompromised.  Centers for Disease Control and Prevention, *People Who Need to Take Extra Precautions,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited Jun. 24, 2020). It was clear the best way to prevent illness is to avoid being exposed to this virus. This basic fact concerned the State of New Jersey, so the state issued various orders, including those which required its citizens to remain at home, but if you had to go out, you needed to practice social distancing and ensure proper hygiene to minimize the risk of infection.  State of New Jersey Governor Phil Murphy, https://www.nj.gov/governor/news/news/562020/20200320j.shtml (last visited Jun. 24, 2020); *See also*, State of New Jersey Department of Health, *Communicable Disease Service,* https://www.state.nj.us/health/cd/topics/covid2019_community.shtml  (last visited Jun. 24, 2020).

This "social distancing" and stay at home order also applied to the courts of New Jersey, which obviously made it nearly impossible to conduct legal affairs as had been normal. See *Kolawole O.T. v. Ahrendt*, 2020 U.S. Dist. LEXIS 101307, 6-15, Civil Action No. 19-21802-MCA (D.N.J. June 10, 2020).

**B.  Specific orders related to the New Jersey Federal Courts**

In response to the Covid-19 national emergency declaration, as set forth in U.S. District Court of New Jersey, Standing Order 2020-12, which superseded previous Standing Orders 2020-02, 2020-03, 2020-04 and 2020-09, *see* **Exhibit B**, the New Jersey District Court ordered, in pertinent part as follows:

> The Court ORDERS that this Standing Order supersedes Standing Orders 2020-02, 2020-03, 2020-04 and 2020-09…
>
> The Court ORDERS that the provisions in its prior Standing Orders that, all filing and discovery deadlines in civil matters that fell between March 25, 2020 and April 30, 2020 were extended by forty-five (45), and those that fell between May 1, 2020 and May 31, 2020 were extended by thirty (30) days, remain in effect, unless a presiding judge in an individual case directs otherwise. This Order affords no further extensions of filing and discovery deadlines. This extension does not apply to any scheduled dates of conferences, which are controlled by the presiding judge…
>
> The Court further ORDERS that all deadlines set by Federal or Local Rules or Court Orders, including, but not limited to, scheduling orders in all civil cases, remain in effect unless modified by this Standing Order, further Order of the Court or by Order of the assigned judicial officer. Any dispute over whether discovery can be effectively accomplished in a manner consistent with applicable health guidelines may be referred to the Magistrate Judge for resolution. Judicial officers may apply the principles of flexibility and accommodation to reasonable requests for filing or scheduling adjustments necessitated by reasonable and fact- based travel, health or safety concerns, or advice or directives of public health officials…
>
> The Court ORDERS that aside from ordering a jury trial, individual judges presiding over civil and criminal proceedings may take such actions consistent with this Order and the Recovery Guidelines as may be lawful and appropriate to ensure the fairness of the proceedings and preserve the substantial rights of the parties…
>
> The Court ORDERS that any litigant may seek such relief from this Order that he/she deems necessary due to emergent circumstances.
>
> The Court further ORDERS that additional Orders addressing Court Operations Under the Exigent Circumstances Created by

COVID-19 shall be entered as warranted, and that this Standing Order will expire no later than August 31, 2020, unless extended by further Order of the Court…"

*See* **Exhibit B.**

A reasonable reading of these orders implies that remand motions should be liberally interpreted in light of such emergent situations, that "snap removals" must be disfavored and subject to remand pending the expiration of the emergency rules as set forth above. This Order clearly states that any filing deadlines occurring between March 25, 2020 and April 30, 2020 are extended 45 days, and those deadlines occurring from May 1, 2020 to May 31, 2020, are extending by 30 days. Reading that with other subparts, this Order means that cases should be treated with rulings consistent with fundamental fairness and these Orders. Nothing is more fundamentally fair than allowing objecting Plaintiffs the right to file the appropriate remand motions to respect their choice of venue in New Jersey. Old "snap removal" rules cannot hold sway in the Covid-19 Emergency, when the Orders are designed to alter such rules to reflect the extra short period of time required to effect service on Defendants properly joined.

C.    **Specific orders related to the New Jersey State Court**

The question of "remand" to NJ State Court must be a function of whether the "snap removal" was appropriate is a matter of NJ State law. In accord with the Federal Emergency Rules, the State Courts in New Jersey had and still have similar rules in place. On March 15, 2020, the New Jersey Supreme Court ordered that "time constraints for discovery will be relaxed" and that "filings still will be accepted through eCourts for applicable case types and on paper for other cases with the required fee to be submitted as usual." **Exhibit A**.  It did not require electronic filings, and in MCL cases, the practice, protocol and procedure at the time was

to mail in the Complaints. Then on March 27, 2020, the New Jersey Supreme Court ordered that
"Rule 4:4-1 is relaxed and supplemented to extend the time period for issuance of a summons
from within 15 days to within 60 days…." *Id.*, at (3)(d). The Covid-19- Second Omnibus Order
On Court Operations And Legal Practice - More Operations To Be Conducted Remotely;
**Exhibit A**, provides, in pertinent part as follows:

> During the COVID-19 pandemic, most court operations have
> continued remotely in all levels of the court system. Since
> transitioning to virtual operations, the courts have conducted more
> than 12,000 remote court events involving more than 80,000
> participants…
>
> The COVID-19 pandemic continues to affect attorneys, parties,
> and others, both professionally and personally. "In recognition of
> the pervasive and severe effects of the COVID-19 public health
> crisis, the court in any individual matter consistent with Rule 1:1-
> 2(a) may suspend proceedings, extend discovery or other
> deadlines, or otherwise accommodate the legitimate needs of
> parties, attorneys, and others in the interests of justice." Such
> individual requests for extensions may be submitted by letter in
> lieu of a formal motion…
>
> The New Jersey courts are continuing to provide meaningful
> access to justice throughout this unprecedented emergency.
> Sustaining and expanding that access requires a careful and
> considered balancing of the important interests at stake, as
> implemented in the Court's April 24 Second Omnibus Order. As
> the COVID-19 pandemic continues, the Court will revisit these
> matters and adjust as appropriate...

*See* **Exhibit A.** This did not change the method of filing Complaints.

Moreover, reading this clearly implies that stringent time limits encompassed by the prior
"snap removals" must be read in accord with fundamental fairness, or as specified above,
"balancing" of the important interest as stake". Here, those interests compel an "expansion" of

the rules regarding remand where in less serious pandemic times, the old "snap removals" may be far more palatable than they are in quieter times.

Hospira's gamesmanship in violation of these New Jersey State orders during this pandemic is evident in their pleadings. The *Bramblett* Notice of Removal was so hastily drawn that it failed to mention the facts surrounding service, only that that it was allegedly not accomplished. **Ex. C**. They did not even note they are not a party to the litigation. *Id.* The burden is on the party removing to prove it did not receive notice. With the Court losing the Complaints, failing to provide any notice to Plaintiff that the cases were found and filed with conformed Complaints being ready for service in addition to the fact that Sanofi's headquarters was closed and not accepting service, these are but a few of the many issues during this pandemic for why "snap removals" should not be considered during in these matters. *See* **Exhibit F**. Merely stating it as an allegation is hardly meeting it's burden of proof, especially when "snap removals" are so hastily undertaken that they are not even a party to the lawsuit they remove. We are unsure which other Notices of Removal are equally infirm.

### III.    The MDL should vacate CTO-57 and allow the transferor court to rule on the Motion to Remand.

Plaintiffs further submit that a transfer to another court before the putative transferor court decides the motion to remand would be inappropriate and a needless waste of all parties' time and resources. The transferor court retains jurisdiction on pending motions despite the entry of a conditional transfer order. *See, e.g., Smith v. Mail Boxes, Etc.*, 191 F.Supp.2d 1155, 1157 (E.D. Cal. 2002) (quoting J.P.M.L. R. 1.5: "… conditional transfer order … does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court"); *Kohl v. Am. Home Prods.*

*Corp.*, 78 F. Supp. 885, 888 (W.D. Ark. 1999) (same); *Illinois Municipal Retirement Fund v. CitiGroup, Inc.*, 391 F.3d 844, 851-52 (7th Cir. 2004) (in a case involving a remand order by a district court, while an MDL had already been created, the Seventh Circuit held "[w]e will not require a district court that believes that it lacks subject matter jurisdiction over a case to facilitate a transfer under § 1407, a statute that does not itself confer jurisdiction.").

Transfer to another federal court when the subject matter jurisdiction of the transferor court has been vigorously and fully contested, by both Plaintiffs and some Defendants in the instant action, is especially inappropriate. As the Sixth Circuit Court of Appeals has observed in a similar context:

> No matter how desirable respondents feel it may be to consolidate in California all litigation in any way related to [the common question], there is nothing in the applicable statute to provide an exception to the rules normally governing removal of cases from state courts. Such a transfer cannot be made unless the district court properly has jurisdiction of the subject matter of the case.

*Bancohio Corp. v. Fox*, 516 F.2d 29, 32 (6th Cir. 1975).

Transferor courts are thus encouraged to decide motions to remand during the pendency of conditional transfer orders. In *Totola Restaurants, L.P. v. Kimberly-Clark Corp.*, 987 F. Supp. 1186 (N.D. Cal. 1997), the court noted that it, as the transferor court, " . . . retains exclusive jurisdiction until the §1407 transfer becomes effective and, as such, motions to remand [to state court] should be resolved before the panel acts on the motion to transfer." *Id*. at 1189. Likewise, in *McQuilkin v. Ford Motor Co.,* Nos. 01-01-92, 2001 WL 197840 (E.D. La. Feb. 23, 2001), the court refused to refrain from ruling on a motion to remand merely because a conditional transfer order had been entered, finding that "the motion to remand centers on questions of state law with which the transferor court is more likely to be familiar that the MDL transferee court." *Id.* at *1.

The questions raised by Defendant's removal of this action strike at the heart of constitutional constraints on federal jurisdiction and principles of comity between state and federal courts. Hospira's "hawk" approach to the docket and attempt to remove the action to federal court pre-service to purportedly avoid any "home court" bias of the state court – especially where one of the other defendants, Sanofi who created the patent for Taxotere, is a disingenuous argument. Plaintiffs' Motion to Remand raises issues relating to Defendant's legal gamesmanship of removing this action before the court even notified Plaintiff counsel that any complaint was filed. These considerations weigh heavily in favor of vacating the conditional transfer order to discourage gamesmanship by defendants as "[a]ll doubts about federal jurisdiction should be resolved in favor of remand to state court," *In re Prempro Products Liability Litigation*, 591 F.3d at 620.

## CONCLUSION

For the foregoing reasons, Plaintiffs' concurrently-filed Motion to Vacate CTO-57 regarding the above-referenced matters, as identified in the attached Schedule of Actions, should be granted. Therefore, Plaintiff respectfully requests that this panel vacate CTO-57 as it relates to Plaintiffs.

**DATED**: June 25, 2020

Respectfully submitted,

*/s/ Karen H. Beyea-Schroeder*
Riley L. Burnett, Jr.
Karen Beyea-Schroeder
BURNETT LAW FIRM
3737 Buffalo Speedway, 18th Floor
Houston, Texas 77098

Page 15 of 16

Telephone: (832) 413-4410
Facsimile: (832) 900-2120
RBurnett@rburnettlaw.com
Karen.Schroeder@rburnettlaw.com

*Attorneys for Plaintiffs*

## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

IN RE: TAXOTERE (DOCETAXEL)                           MDL No. 2740
PRODUCTS LIABILITY LITIGATION

This Document Relates to the Case Identified
Below:

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

*Pack Jordan, Donna v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06503 (D. NJ)
*Cora, Carmela v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06474 (D. NJ)
*Gamboa, Georgina v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06481 (D. NJ)
*Glover, Tena v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06463 (D. NJ)
*Gough, Sandra v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06492 (D. NJ)
*Rooney, Donna v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06478 (D. NJ)
*Vick, Susan v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06487 (D. NJ)
*Blades, Carla v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06527 (D. NJ)
*Bramblett, Patricia v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06550 (D. NJ)
*Chaisson-Ricker, Elizabeth v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06530 (D. NJ)
*Cabrera, Ailene v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06538 (D. NJ)
*Bidwell, Susan v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06519 (D. NJ)
*Bryant, Cynthia v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06506 (D. NJ)
*Cooper, Romancia v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06521 (D. NJ)
*Payton, Towanda v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06523 (D. NJ)
*Sullivan, Charistian v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06516 (D. NJ)

---

## DEFENDANTS SANOFI U.S. SERVICES INC. AND SANOFI-AVENTIS U.S. LLC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER 56

Defendants Sanofi U.S. Services Inc. and sanofi-aventis U.S. LLC (collectively "Sanofi"), by and through counsel, submit this Response in Opposition to Plaintiffs' Motion to Vacate Conditional Transfer Order 56, and respectfully request that the Panel transfer these actions to Multidistrict Litigation No. 2740 ("MDL 2740") without further delay.

1

## INTRODUCTION

Plaintiffs have moved to vacate the order transferring the above-captioned actions to the Honorable Jane Triche Milazzo of the Eastern District of Louisiana for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407. In support, Plaintiffs discuss subjects that are irrelevant to whether or not this Panel may transfer the actions at issue to MDL 2740. Plaintiffs blame others for failing to manage their own cases. First, they blame New Jersey state court for "losing the Complaints," and failing to provide notice to Plaintiffs that their cases had been filed.[1] Mot. to Vacate (Doc. 626) at 1-2. Next, they blame Sanofi for closing their headquarters due to the COVID pandemic.[2] *Id.* at 2. Then they blame Defendants for learning that a lawsuit had been filed against them, claiming such conduct is "reprehensible." *Id.* at 4. These arguments are not only irrelevant, they are nonsensical. It is Plaintiffs' responsibility – and their responsibility alone – to manage and promptly serve their legal actions as required by law. Their failure to do so does not prevent transfer of these actions to MDL 2740. Moreover, no pending motion to remand before the District of New Jersey should bar transfer. This Panel has rejected this argument many times over, and for the reasons discussed herein, the Panel should reject it again.

On October 4, 2016, this Panel created an MDL titled *In re: Taxotere (Docetaxel) Products Liability Litigation*. (Doc. 81). Since then, hundreds of cases have been transferred to the MDL, which now has more than 12,500 pending cases. In each, the plaintiff alleges that she experienced permanent alopecia as a result of receiving chemotherapy with Taxotere®/docetaxel.

---

[1] All of these cases had been entered on the docket (and available on the New Jersey judiciary website) for several days before Defendants removed – some for as long as a week.

[2] When Sanofi's headquarters was closed, Sanofi could be served via registered agent or certified mail. It was served in several other cases during that time.

2

These cases are no different. In CTO-56, the Panel stated that, "[i]t appears that the action(s) on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Eastern District of Louisiana and assigned to Judge Milazzo." *See* Conditional Transfer Order (CTO-56) (Doc. 601). The Panel is correct.

As this Panel has previously recognized, the pendency of a motion to remand is not a proper ground for vacating a Conditional Transfer Order because the transferee judge can easily rule on such motions in the MDL. Plaintiffs' contrary allegations notwithstanding, transfer to the MDL – along with all other similarly-situated actions – will promote the just and efficient conduct of the litigation. These cases should be transferred to Judge Milazzo without delay.

## ARGUMENT

As a preliminary matter, the merits of Plaintiffs' omnibus remand motion are not at issue here. "Section 1407 does not empower the MDL Panel to decide questions going to the jurisdiction or the merits of a case, including issues relating to a motion to remand." *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990). However, Sanofi strongly believes that the removal of these cases is proper and that these cases will therefore remain in federal court. The Second, Third, and Fifth Circuit Court of Appeals, as well as numerous district courts, have concluded that 28 U.S.C. § 1441(b)(2) permits defendants, including forum defendants, to remove before service of process. *See, e.g.*, *Texas Brine Co., L.L.C. v. Am. Arbitration Ass'n, Inc.*, 955 F.3d 482, 485-87 (5th Cir. 2020); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d at 706-07 (2d Cir. 2019); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 153-54 (3d Cir. 2018) (holding pre-service removal of action involving forum-defendant proper based upon the plain

3

language of the statute).[3]  Regardless, the remand issue is not before the MDL Panel.  Instead,

"the sole issue . . . is the merits of the transfer viewed against the purposes of the multidistrict

statutory scheme."  *In re Ivy*, 901 F.2d at 9.

Under 28 U.S.C. § 1407, the Panel has authority to transfer civil actions pending in

different districts to any district for coordinated or consolidated pretrial proceedings if: (i) the

actions involve one or more common questions of fact; (ii) transfer would serve the convenience

of the parties and witnesses; and (iii) transfer would promote the just and efficient conduct of the

actions.  *See* 28 U.S.C. § 1407(a).  These actions clearly satisfy each of these requirements.  Like

the Complaints in the other cases already transferred to the Taxotere MDL, these Plaintiffs allege

they experienced permanent alopecia as a result of receiving chemotherapy with

Taxotere®/docetaxel.  Plaintiffs cannot and do not dispute that their respective lawsuits raise

---

[3] *See also Poznanovich v. AstraZeneca Pharm. LP*, 2011 WL 6180026, at *4 (D.N.J. Dec. 12, 2011) ("The language of the statute is clear that Congress intended § 1441(b)'s prohibition on removal to apply not merely where a forum defendant is properly joined in the action, but only where service has been effected on that forum defendant."); *Bivins v. Novartis Pharm. Corp.*, 2009 WL 2496518, at *2 (D.N.J. Aug. 10, 2009) ("Here, the statutory language is clear: removal is prohibited only where a defendant, who is a resident of the forum state, has been properly joined *and served*.") (internal quotations omitted, emphasis in original); *Jaeger v. Schering Corp.*, 2007 WL 3170125, at *3 (D.N.J. Oct. 25, 2007) ("this Court must give effect to the literal interpretation in the absence of a contrary Congressional intent and reject Plaintiffs' attempt to ignore the plain language of the statute and circumvent Congress's express intention"; "[T]here is no dispute that Defendants were not served at the time removal was filed.  Accordingly, there is no applicable limitation on Defendants' right to remove the matter to this Court."); *Yocham v. Novartis Pharm. Corp.*, 2007 WL 2318493, at *3 (D.N.J. Aug. 13, 2007) (denying remand motion based upon "a plain reading of § 1441(b) and straightforward application of it"); *Thomson v. Novartis Pharm. Corp.*, 2007 WL 1521138, at *4 (D.N.J. May 22, 2007) (denying remand based upon a "plain reading of § 1441(b)"); *Ripley v. Eon Labs Inc.*, 622 F. Supp. 2d 137, 142 (D.N.J. 2007) ("The plain language of 28 U.S.C. § 1441(b), despite the numerous policy arguments against it, permits removal of this case from the Superior Court of New Jersey to this Court"); *Frick v. Novartis Pharmaceuticals Corp.*, 2006 WL 454360, at *3 (D.N.J. Feb. 23, 2006) ("[W]e find that the language of the statute is unambiguous [and] it is not readily apparent that applying the clear language of the statute to the present case would produce a result that is demonstrably at odds with the intentions of Congress.").

common questions of fact with the other actions in MDL 2740; instead, their argument is that transfer to the MDL before the District of New Jersey decides the motion to remand "would be inappropriate and a needless waste of all parties' time and resources." *See* Memo. in Supp. of Mot. to Vacate (Doc. 626-1) at 13-15. The Panel has consistently rejected similar arguments and should do so again here.

Stated simply, the "pendency of a motion to remand to state court is not a sufficient basis to avoid inclusion in Section 1407 proceedings. We note that motions to remand . . . can be presented to and decided by the transferee judge." *In re VIOXX Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005). Indeed judicial efficiency is often better-served by permitting the MDL Court to decide a remand motion. *See, e.g., In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices Litig.*, 609 F. Supp. 2d 1379, 1379-80 (J.P.M.L. 2009); *In re Gadolinium Contrast Dyes Prods. Liab. Litig.*, 559 F. Supp. 2d 1402, 1403 (J.P.M.L. 2008) ("Plaintiffs can present their motions for remand to state court to the transferee court."); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347 (J.P.M.L. 2001) ("there is no need to delay transfer in order to accommodate any interest of the transferor court in resolving a pending remand motion."); *In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 700 (J.P.M.L. 1995) ("We observe that the pending motion to remand to the Northern District of Alabama action to state court can be presented to and decided by the transferee judge."); *In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 824 (J.P.M.L. 1979) (transfer would enable "a single judge to consider these motions and thus will have the salutary effect of promoting judicial economy and avoiding inconsistent adjudications regarding this particular issue."); *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 368 F. Supp. 812, 813 (J.P.M.L. 1973) ("We see no reason for delaying our decision. Because these actions

5

involve questions of fact identical to those raised in the actions previously transferred by the Panel, transfer is necessary in order to eliminate the possibility of duplicative discovery and conflicting pretrial rulings.").

These cases are no different. There is no good reason consistent with the policies underpinning 28 U.S.C. § 1407 why Judge Milazzo cannot hear Plaintiffs' remand motion after transfer. Plaintiffs' Omnibus Motion to Remand is not unique. The crux of Plaintiffs' Motion is that federal subject matter jurisdiction is lacking because certain Defendants are "citizens" of New Jersey, i.e., "forum defendants." This jurisdictional issue is "easily capable of arising in hundreds of other cases in other district courts throughout the nation" – each of which shares the same common questions of law and fact with this product liability lawsuit. *In re Ivy*, 901 F. 2d at 9; *see also* Transfer Order, *In re: Taxotere Docetaxel Prod. Liab. Litig.*, MDL No. 2740 (J.P.M.L. Apr. 5, 2017), ECF No. 357 (transferring "snap removed" cases to MDL 2740 finding "these actions involve common questions of fact with the actions transferred to MDL No. 2740, and that transfer under 28 U.S.C. § 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation"). In fact, there is another case pending transfer where this jurisdictional issue has arisen.[4] Thus, the real economy lies in transferring all similarly-situated cases to MDL 2740, so that "the [same] jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course. Consistency as well as economy is thus served." *See In re Ivy*, 901 F. 2d at 9.

The transfer of these cases to MDL 2740 will enable the parties to take advantage of the multiple efficiencies and savings of time and resources associated with consolidated and coordinated pretrial proceedings.

---

[4] *See, e.g.*, *Andrews v. Sanofi S.A., et al.*, 3:20-cv-06834 (D.N.J.).

6

## CONCLUSION

These cases are no different than the other cases involving Taxotere®/docetaxel that have already been transferred to MDL 2740. It is a simple, longstanding rule of this Court that questions regarding federal jurisdiction do not preclude MDL transfer under 28 U.S.C. § 1407. As established above, Plaintiffs' arguments to the contrary lack merit, and their Motion to Vacate Conditional Transfer Order 56 should be denied.

Dated: July 10, 2020

/s/ *Jon A. Strongman*
Jon A. Strongman
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816.474.6550
Facsimile: 816.421.5547
jstrongman@shb.com

**COUNSEL FOR DEFENDANTS
SANOFI U.S. SERVICES INC. AND
SANOFI-AVENTIS U.S. LLC**

7

BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE: TAXOTERE (DOCETAXEL)                          MDL No. 2740
PRODUCTS LIABILITY LITIGATION

This Document Relates to the Case Identified
Below:

---

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

*Andrews, Phyllis v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06834 (D. NJ)

DEFENDANTS SANOFI U.S. SERVICES INC. AND SANOFI-AVENTIS U.S. LLC'S
RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO VACATE
CONDITIONAL TRANSFER ORDER 57

Defendants Sanofi U.S. Services Inc. and sanofi-aventis U.S. LLC (collectively

"Sanofi"), by and through counsel, submit this Response in Opposition to Plaintiff's Motion to

Vacate Conditional Transfer Order 57, and respectfully requests that the Panel transfer this

action to Multidistrict Litigation No. 2740 ("MDL 2740") without further delay.

INTRODUCTION

Plaintiff has moved to vacate the order transferring the above-captioned action to the

Honorable Jane Triche Milazzo of the Eastern District of Louisiana for coordinated pretrial

proceedings pursuant to 28 U.S.C. § 1407. In support, Plaintiff discusses subjects that are

irrelevant to whether or not this Panel may transfer the action at issue to MDL 2740. Plaintiff

blames others for failing to manage her own case. First, she blames New Jersey state court for

"losing the Complaint" and failing to provide notice to Plaintiff that her case had been filed.[1]

---

[1] This case was entered on the docket (and available on the New Jersey judiciary website) on
May 27, 2020, more than a week before Defendants removed on June 4, 2020.

1

Mot. to Vacate (Doc. 625) at 1-2. Next, Plaintiff blames Sanofi for closing their headquarters due to the COVID pandemic.[2] *Id.* at 2. Then she blames Defendants for learning that a lawsuit had been filed against them, claiming such conduct is "reprehensible." *Id.* at 4. These arguments are not only irrelevant, they are nonsensical. It is Plaintiff's responsibility – and her responsibility alone – to manage and promptly serve her legal action as required by law. Her failure to do so does not prevent transfer of this action to MDL 2740. Moreover, no pending motion to remand before the District of New Jersey should bar transfer. This Panel has rejected this argument many times over, and for the reasons discussed herein, the Panel should reject it again.

On October 4, 2016, this Panel created an MDL titled *In re: Taxotere (Docetaxel) Products Liability Litigation*. (Doc. 81). Since then, hundreds of cases have been transferred to the MDL, which now has more than 12,500 pending cases. In each, the plaintiff alleges that she experienced permanent alopecia as a result of receiving chemotherapy with Taxotere®/docetaxel. This case is no different. In CTO-57, the Panel stated that, "[i]t appears that the action(s) on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Eastern District of Louisiana and assigned to Judge Milazzo." *See* Conditional Transfer Order (CTO-57) (Doc. 604). The Panel is correct.

As this Panel has previously recognized, the pendency of a motion to remand is not a proper ground for vacating a Conditional Transfer Order because the transferee judge can easily rule on such motions in the MDL. Plaintiff's contrary allegations notwithstanding, transfer to the

---

[2] When Sanofi's headquarters was closed, Sanofi could be served via registered agent or certified mail. It was served in several other cases during that time.

2

MDL – along with all other similarly-situated actions – will promote the just and efficient conduct of the litigation. This case should be transferred to Judge Milazzo without delay.

## ARGUMENT

As a preliminary matter, the merits of Plaintiff's remand motion is not at issue here. "Section 1407 does not empower the MDL Panel to decide questions going to the jurisdiction or the merits of a case, including issues relating to a motion to remand." *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990). However, Sanofi strongly believes that the removal of this case is proper and that this case will therefore remain in federal court. The Second, Third, and Fifth Circuit Court of Appeals, as well as numerous district courts, have concluded that 28 U.S.C. § 1441(b)(2) permits defendants, including forum defendants, to remove before service of process. *See, e.g.*, *Texas Brine Co., L.L.C. v. Am. Arbitration Ass'n, Inc.*, 955 F.3d 482, 485-87 (5th Cir. 2020); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d at 706-07 (2d Cir. 2019); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 153-54 (3d Cir. 2018) (holding pre-service removal of action involving forum-defendant proper based upon the plain language of the statute).[3] Regardless, the

---

[3] *See also Poznanovich v. AstraZeneca Pharm. LP*, 2011 WL 6180026, at *4 (D.N.J. Dec. 12, 2011) ("The language of the statute is clear that Congress intended § 1441(b)'s prohibition on removal to apply not merely where a forum defendant is properly joined in the action, but only where service has been effected on that forum defendant."); *Bivins v. Novartis Pharm. Corp.*, 2009 WL 2496518, at *2 (D.N.J. Aug. 10, 2009) ("Here, the statutory language is clear: removal is prohibited only where a defendant, who is a resident of the forum state, has been properly joined *and served*.") (internal quotations omitted, emphasis in original); *Jaeger v. Schering Corp.*, 2007 WL 3170125, at *3 (D.N.J. Oct. 25, 2007) ("this Court must give effect to the literal interpretation in the absence of a contrary Congressional intent and reject Plaintiffs' attempt to ignore the plain language of the statute and circumvent Congress's express intention"; "[T]here is no dispute that Defendants were not served at the time removal was filed. Accordingly, there is no applicable limitation on Defendants' right to remove the matter to this Court."); *Yocham v. Novartis Pharm. Corp.*, 2007 WL 2318493, at *3 (D.N.J. Aug. 13, 2007) (denying remand motion based upon "a plain reading of § 1441(b) and straightforward application of it"); *Thomson v. Novartis Pharm. Corp.*, 2007 WL 1521138, at *4 (D.N.J. May 22, 2007) (denying remand based upon a "plain reading of § 1441(b)"); *Ripley v. Eon Labs Inc.*, 622 F. Supp. 2d

3

remand issue is not before the MDL Panel. Instead, "the sole issue . . . is the merits of the transfer viewed against the purposes of the multidistrict statutory scheme." *In re Ivy*, 901 F.2d at 9.

Under 28 U.S.C. § 1407, the Panel has authority to transfer civil actions pending in different districts to any district for coordinated or consolidated pretrial proceedings if: (i) the actions involve one or more common questions of fact; (ii) transfer would serve the convenience of the parties and witnesses; and (iii) transfer would promote the just and efficient conduct of the actions. *See* 28 U.S.C. § 1407(a). This action clearly satisfies each of these requirements. Like the Complaints in the other cases already transferred to the Taxotere MDL, this Plaintiff alleges she experienced permanent alopecia as a result of receiving chemotherapy with Taxotere®/docetaxel. Plaintiff cannot and does not dispute that her lawsuit raises common questions of fact with the other actions in MDL 2740; instead, her argument is that transfer to the MDL before the District of New Jersey decides the motion to remand "would be inappropriate and a needless waste of all parties' time and resources." *See* Mot. to Vacate (Doc. 625-1) at 13-15. The Panel has consistently rejected similar arguments and should do so again here.

Stated simply, the "pendency of a motion to remand to state court is not a sufficient basis to avoid inclusion in Section 1407 proceedings. We note that motions to remand . . . can be presented to and decided by the transferee judge." *In re VIOXX Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005). Indeed judicial efficiency is often better-served by permitting

---

137, 142 (D.N.J. 2007) ("The plain language of 28 U.S.C. § 1441(b), despite the numerous policy arguments against it, permits removal of this case from the Superior Court of New Jersey to this Court"); *Frick v. Novartis Pharmaceuticals Corp.*, 2006 WL 454360, at *3 (D.N.J. Feb. 23, 2006) ("[W]e find that the language of the statute is unambiguous [and] it is not readily apparent that applying the clear language of the statute to the present case would produce a result that is demonstrably at odds with the intentions of Congress.").

4

the MDL Court to decide a remand motion. *See, e.g., In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices Litig.*, 609 F. Supp. 2d 1379, 1379-80 (J.P.M.L. 2009); *In re Gadolinium Contrast Dyes Prods. Liab. Litig.*, 559 F. Supp. 2d 1402, 1403 (J.P.M.L. 2008) ("Plaintiffs can present their motions for remand to state court to the transferee court."); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347 (J.P.M.L. 2001) ("there is no need to delay transfer in order to accommodate any interest of the transferor court in resolving a pending remand motion."); *In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 700 (J.P.M.L. 1995) ("We observe that the pending motion to remand to the Northern District of Alabama action to state court can be presented to and decided by the transferee judge."); *In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 824 (J.P.M.L. 1979) (transfer would enable "a single judge to consider these motions and thus will have the salutary effect of promoting judicial economy and avoiding inconsistent adjudications regarding this particular issue."); *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 368 F. Supp. 812, 813 (J.P.M.L. 1973) ("We see no reason for delaying our decision. Because these actions involve questions of fact identical to those raised in the actions previously transferred by the Panel, transfer is necessary in order to eliminate the possibility of duplicative discovery and conflicting pretrial rulings.").

This case is no different. There is no good reason consistent with the policies underpinning 28 U.S.C. § 1407 why Judge Milazzo cannot hear Plaintiff's remand motion after transfer. Plaintiff's Motion to Remand is not unique. The crux of Plaintiff's Motion is that federal subject matter jurisdiction is lacking because certain Defendants are "citizens" of New Jersey, i.e., "forum defendants." This jurisdictional issue is "easily capable of arising in hundreds of other cases in other district courts throughout the nation" – each of which shares the

5

same common questions of law and fact with this product liability lawsuit. *In re Ivy*, 901 F. 2d at 9; *see also* Transfer Order, *In re: Taxotere Docetaxel Prod. Liab. Litig.*, MDL No. 2740 (J.P.M.L. Apr. 5, 2017), ECF No. 357 (transferring "snap removed" cases to MDL 2740 finding "these actions involve common questions of fact with the actions transferred to MDL No. 2740, and that transfer under 28 U.S.C. § 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation"). In fact, there are several other cases pending transfer where this jurisdictional issue has arisen.[4] Thus, the real economy lies in transferring all similarly-situated cases to MDL 2740, so that "the [same] jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course. Consistency as well as economy is thus served." *See In re Ivy*, 901 F. 2d at 9.

Transfer of this case to MDL 2740 will enable the parties to take advantage of the multiple efficiencies and savings of time and resources associated with consolidated and coordinated pretrial proceedings.

---

[4] *See, e.g.*, *Pack Jordan, Donna v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06503 (D. NJ); *Cora, Carmela v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06474 (D. NJ); *Gamboa, Georgina v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06481 (D. NJ); *Glover, Tena v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06463 (D. NJ); *Gough, Sandra v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06492 (D. NJ); *Rooney, Donna v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06478 (D. NJ); *Vick, Susan v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06487 (D. NJ); *Blades, Carla v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06527 (D. NJ); *Bramblett, Patricia v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06550 (D. NJ); *Chaisson-Ricker, Elizabeth v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06530 (D. NJ); *Cabrera, Ailene v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06538 (D. NJ); *Bidwell, Susan v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06519 (D. NJ); *Bryant, Cynthia v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06506 (D. NJ); *Cooper, Romancia v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06521 (D. NJ) *Payton, Towanda v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06523 (D. NJ); *Sullivan, Charistian v. Sanofi U.S. Services Inc., et al.*, No. 3:20-cv-06516 (D. NJ).

## CONCLUSION

This case is no different than the other cases involving Taxotere<sup>®</sup>/docetaxel that have already been transferred to MDL 2740. It is a simple, longstanding rule of this Court that questions regarding federal jurisdiction do not preclude MDL transfer under 28 U.S.C. § 1407. As established above, Plaintiff's arguments to the contrary lack merit, and her Motion to Vacate Conditional Transfer Order 57 should be denied.

Dated: July 10, 2020

<div style="margin-left:40%;">

/s/ *Jon A. Strongman*
Jon A. Strongman
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816.474.6550
Facsimile: 816.421.5547
jstrongman@shb.com

**COUNSEL FOR DEFENDANTS
SANOFI U.S. SERVICES INC. AND
SANOFI-AVENTIS U.S. LLC**

</div>

7

## BEFORE THE UNITED STATES JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

| | |
|---|---|
| _____ ) | |
| **IN RE: TAXOTERE (DOCETAXEL** ) | |
| **PRODUCT LIABILITY LITIGATION** ) | **MDL DOCKET NO. 2740** |
| _____ ) | |

## CERTIFICATE OF SERVICE

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial

Panel on Multidistrict Litigation, I hereby certify that on July 10, 2020 a copy of the foregoing

Response in Opposition to Plaintiff's Motion to Vacate Conditional Transfer Order 57, and this

Certificate of Service were electronically filed with the Clerk of the JPML by using the CM/ECF

and was served on all counsel or parties via the Court's electronic filing system and/or electronic

mail:

| Case | Jurisdiction | Case No. | Plaintiffs' Counsel |
|---|---|---|---|
| Phyllis Andrews v. Sanofi U.S. Services Inc., et al. | District of New Jersey | 3:20-cv-06834-PGS-DEA | Karen Beyea-Schroeder<br>Karen.Schroeder@rburnettlaw.com<br>BURNETT LAW FIRM<br>3737 Buffalo Speedway, Ste. 1850<br>Houston, TX 77098<br>(832) 413-4410 |

Stephen Matthews
stephen.matthews@dlapiper.com
DLA PIPER
51 John F. Kennedy Parkway, Suite 120
Short Hills, NJ 07028
(973) 520-2541
*Attorney for Defendants sanofi-aventis*
*U.S. LLC and Sanofi U.S. Services Inc.*

The following parties have been served via electronic mail to counsel of record in MDL 2740 on July 10, 2020:

| | |
|---|---|
| Accord Healthcare, Inc.<br>1009 Slater Road, Suite 210B<br>Durham, NC 27703 | Hospira Worldwide, Inc.; Hospira Inc.<br>275 N. Field Drive<br>Lake Forest, IL 60045 |
| McKesson Corporation doing d/b/a/<br>McKesson Packaging<br>6535 N. State Highway 161<br>Irving, TX 75039 | Sandoz, Inc.<br>100 College Road West<br>Princeton, NJ 08540 |
| Sun Pharmaceutical Industries, Inc.<br>270 Prospect Plains Rd<br>Cranbury, NJ 08512 | Actavis LLC; Actavis Pharma, Inc.<br>400 Interpace Parkway, Bldg A.<br>Parsippany, NJ 07054 |
| Pfizer, Inc.<br>235 E. 42nd Street<br>New York, NY 10017 | Sagent Pharmaceuticals Inc.<br>1901 N. Roselle Road, Suite 450<br>Schaumburg, IL 60195 |

The following parties are international companies and will not be served.

| | |
|---|---|
| Sanofi S.A.<br>54, rue La Boetie<br>75008 Paris FRANCE | Aventis Pharma S.A.<br>20 Avenue Raymond Aron<br>92160 Antony FRANCE |
| Sun Pharma Global FZE<br>Executive Suite #42, Block Y, SAIF Zone<br>P.O. Box 122304<br>Sharjah, United Arab Emirates | |

Dated: July 10, 2020

Respectfully Submitted,

SHOOK, HARDY & BACON L.L.P.

*/s/ Jon Strongman*
Jon Strongman, Esq.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
Email: jstrongman@shb.com

*Attorney for Defendants sanofi-aventis U.S. LLC and Sanofi U.S. Services Inc.*

2